A. C. L. R. R. Co. v. Benedict Pineapple Co.—Opinion of Court.

ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, PLAINTIFF IN ERROR, v. BENEDICT PINEAPPLE COMPANY, A CORPORATION, DEFENDANT IN ERROR.

1. A count in a declaration for damage to fruit by freezing, owing to the destruction by fire of its canvas covering, should allege facts to bring home to the defendant the knowledge that such result might be reasonably expected to follow directly and naturally from the burning.

2. To constitute actionable negligence in "allowing" a burning by fire communicated from a locomotive, there must be alleged negligence in the communication or other circumstances that would cast a duty upon the railroad company to put out the fire.

This case was decided by the Court En Banc.

Writ of Error in the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the Court.

*Sparkman & Carter*, for Plaintiff in Error;

*Massey & Warlow*, for Defendant in Error.

COCKRELL, J.:   A judgment for near seven thousand dollars was recovered by the Pine-Apple Company against the railroad company, upon the theory of a negligent communication of sparks from a passing engine, the recovery being obtained in large part upon the fourth count in the declaration, which reads as follows: "And also for that the defendant is a railroad corporation operating a railroad through the city of Orlando and on or about January 7th, 1905, it carelessly and negligently allowed a pinery of the plaintiff situated near the track of the defendant to have its canvas covering thereon

placed to protect the pineapple plants and their fruit from cold, to be burned by means of fire communicated from or by means of its locomotive, and the said plants and their fruit were damaged by cold and frost soon thereafter for want of the canvas covering so negligently and carelessly burned by the defendant."

A demurrer was interposed to this count upon three grounds: (1) It does not state a cause of action; (2) it is vague and indefinite, and, (3), it shows the defendant's negligence was not the proximate cause of the plaintiff's damage.

If the allegation as to the burning of the canvas covering be considered simply as an inducement to the alleged damage by the cold, there are no facts set out sufficient to bring home to the defendant that such burning might reasonably have been expected to result directly and naturally in damage to the plants and fruit by cold and frost. It may be that in a more northern latitude this would be the natural proximate result from such burning in the month of January, but we cannot apply the same rule from any judicial knowledge of the climate in South Florida. For a definition of proximate cause, see Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Florida, 1, 9 South. Rep. 661.

On the other hand if the proper construction of the declaration be that it claims damages for the destruction by fire of the canvas covering and also for the loss by the cold by reason of such destruction, the count is fatally defective in not alleging negligence, either of commission or omission, on the part of the defendant in communicating the fire. Its carelessness and negligence is confined to the permissive or negative act of allowing the canvas covering to be burned without any

showing of a duty upon the defendant to put out a fire which was not caused by its carelessness or negligence. The last line of the count is not a positive allegation of negligence in causing the burning, but is merely descriptive of the canvass covering.

For these errors we think the demurrer of the fourth count should have been sustained.

The third count is subject to the latter criticism of the fourth and should be amended.

The judgment is reversed, with directions to sustain the demurrers as to the third and fourth counts.

TAYLOR, HOCKER, WHITFIELD and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., Concurring: I have achieved the distinction of preparing an opinion in this case in which my five associates have refused to concur. One would be justified in concluding from this fact that the opinion must be filed with erroneous conceptions of the law. This may be true, for the combined judgment of the other members of the court is far more likely to be correct than my own standing alone, yet with the utmost respect for their views I have still decided to file and publish my opinion. Several reasons induce me to do this; first, I am willing for the members of the bar to see how very bad the opinion really is; second, Because it seems to me that the points involved merit a more extended treatment than they have received in the short opinion prepared by Mr. Justice Cockrell, in which the other members of the court have concurred; and third, Because, as egotistical as it may appear, I have the conviction that I am right, and am desirous of giving the reasons for the faith that is within me. I have devoted a great deal of time to and

bestowed considerable labor upon the opinion, and am constrained to believe that it will be of service to the members of the bar, and that some of them will approve my attempt to grapple with and reason out to a conclusion the points raised.

In reply to the objection urged by some of my associates that my opinion contains disparaging reflections upon the ability of the respective counsel in the case, I wish to enter an emphatic denial. No such reflections can be found therein. It so happens that I have the honor of claiming as my personal friends every one of the counsel, and I have strangely misjudged them if they should find anything personal in the opinion or should take offense at anything said therein. They are all busy practitioners fast beating their "pathway out to wealth and fame," while my position requires me to pass judgment upon pleadings in cases in which they are questioned. Members of the bar frequently have to prepare their pleadings hurriedly, sometimes, as in the instant case, in the midst of a trial, while I have all the time I may desire in which to consider and announce my conclusions thereon. What I have said in my opinion of the declaration and demurrer was strictly in the discharge of my official duty. I have always been able to say " *Tros Tyriusque mihi nullo discrimine agetur.*" I have known neither friend nor stranger; it has never been a question with me, who are the parties to the record? Or who are the counsel engaged in the case? But, what questions are presented for determination? It is my province to deal with principles, not with individuals. Were it otherwise, I would indeed be recreant to my duty, and would deserve the sentence of condemnation passed upon the Crusader of old, "His shield must be reversed, his name degraded."

I have striven to "walk in the light" of authority, reaching a conclusion by reasoning "from precedent to precedent." I may have signally failed to attain this high ideal, but I have at least made the effort. "Mastering the lawless science of our law" is beyond the power of any man, and, let me frankly admit it, in searching "that codeless myriad of precedent," in groping my way through "that wilderness of single instances," oftentimes I have found the utmost difficulty in reaching a conclusion. I have a deepening conviction day by day of the great responsibility resting upon this court. Whether the question be one of life, liberty or property, our decision is *final*, except in those very few cases which may be taken to the Supreme Court of the United States.

Asking the indulgence of the bar for the prefatory remarks, I now respectfully submit the opinion.

This is an action at law instituted by the defendant in error against the plaintiff in error in the Circuit Court for Orange County, in which a trial was had by a jury and which resulted in a verdict for the defendant in error, here in styled the plaintiff, in the sum of $7,684.20. A motion for a new trial was made by the plaintiff in error, herein styled the defendant, upon various grounds, the fourth of which was that "the verdict is excessive." Upon this motion the trial court made an order to the effect that the plaintiff remit the sum of $750.97, in default of which the motion would stand granted on said ground. The plaintiff entered a remittitur, in accordance with the order of the court, and final judgment was entered against the defendant in the sum of $6,928.23, damages, and $22.18 costs. This judgment the defendant seeks to have reviewed here by writ of error, returnable to the present term.

The original declaration is as follows: "The Benedict Pineapple Company, a corporation existing under the laws of the State of Florida, by Massey & Warlow Esqrs., its attorneys, sues the Atlantic Coast Line Railroad Company, a corporation.

For that the defendant is a railroad corporation operating a railroad through the City of Orlando, and on or about the 7th day of January, A. D. 1905, it so carelessly and negligently managed and operated one of its locomotives, which drawing a train through said city in Orange County aforesaid, that fire escaped from the said locomotive and set fire to a pinery belonging to the plaintiff and situated near to the track of the defendant.

And also for that the defendant is a railroad corporation operating a railroad through the City of Orlando and on or about January 7th, 1905, it ran a train through said city in Orange County aforesaid, drawn by a locomotive so carelessly and negligently equipped and provided with proper apparatus to prevent the escape of fire from said locomotive that fire did escape therefrom and set fire to the pinery belonging to the plaintiff and situated near to the track of the defendant.

And also for that the defendant is a railroad corporation operating a railroad through the City of Orlando, and on or about January 7th, 1905, it carelessly and negligently allowed a pinery of the plaintiff, situated near the track of the defendant, to be burned by means of fire communicated from or by means of its locomotive.

And the plaintiff claims $10,000.00."

To this declaration the defendant interposed the following demurrer: "The defendant in the above entitled cause says that the declaration filed by the plaintiff and

each count thereof is bad in substance and law and demurs thereto.

*Sparkman & Carter,* Attorneys for Defendant.

And for substantial matters of law to be argued to the court the defendant says that neither the declaration as a whole, nor either count thereof in itself, states a cause of action against the defendant.

Second, That the declaration is too vague and uncertain for the defendant to take issue on any allegation therein.

Third, Each ground herein set out is to be taken to the declaration as a whole and separately to each count thereof."

The overruling of this demurrer forms the basis for the first assignment.

The defendant entered a plea of not guilty, and the trial was begun upon the issue so joined, during the process of which, by leave of the court, the plaintiff added the following count to its declaration: "And also for that the defendant is a railroad corporation operating a railroad through the City of Orlando and on or about January 7th, 1905, it carelessly and negligently allowed a pinery of the plaintiff, situated near the tracks of the defendant, to have its canvas covering thereon placed to protect the pineapple plants and their fruit from cold, to be burned by means of fire communicateed from or by means of its locomotive, and the said plants and their fruit were damaged by cold and frost soon thereafter for want of the canvas covering so negligently and carelessly burned by the defendant."

To this count the defendant interposed the following demurrer:

"1. The added count does not state a cause of action.

"2. Said added count is too vague and uncertain to join issue on.

"3. The allegations in said count show on their face that the negligence of the defendant was not the proximate cause of the plaintiff's damage."

The demurrer was overruled and the defendant filed a plea of not guilty to the additional count.

The overruling of this demurrer forms the basis for the second assignment.

These two assignments I shall treat in their order, but before entering upon this discussion I deem it advisable to consider the function or office of a writ of error. While the authorities are divided as to whether a writ of error is to be regarded as a new action or a continuation of the original litigation, this court has aligned itself with the courts holding the latter doctrine. See State *ex rel.* Andreu v. Canfield, 40 Fla. 36, 23 South. Rep. 591, S. C. 42 L. R. A. 72, for a full discussion of the question. Which ever view we take, it still remains true that the object of a writ of error is to review and correct an error of the law committed in the proceedings which is not amendable or cured at common law or by some of the statutes of amendment or jeofail. While the parties to the cause remain the same, though generally changing places, the defeated party becoming the plaintiff in error, and the successful party the defendant in error, the primary object of a writ of error is not to try the question between the parties but rather to try the judgment of the court below, to test the judgment by the law. "It is not the action to be tried, but the judgment." See Allen, Ball & Co. v. Mayor &c., of Savannah, 9 Ga. 286, text 293, and authorities there cited, approvingly cited by this court in State *ex rel.* Merchants

National Bank v. Hull, Clerk, 37 Fla. 579, text 583, 20 South. Rep. 762, 764; Kelly v. Strouse, 116 Ga. 872, text 884, 43 S. E. Rep. 280; Bristol v. United States, 129 Fed. Rep. 87, text 89, 63 C. C. A. 529, 531; 8 Words and Phrases, 7533 *et seq.;* Rand v. King, 134 Pa. St., 641, text 645, 19 Atl. Rep. 806, 807, 2 Bouvier's Law Dictionary, Rawle's Revision, 1249.

It is, therefore, incumbent upon the plaintiff in error not only to assign the errors which he conceives to have been committed in the trial of a cause and upon which he seeks a reversal of the judgment, but to make them clearly to appear to the appellate court, filing briefs in support thereof, in which the reasons therefor and the citations of authorities upon which he relies shall be set forth. If he fails to argue any of the errors which he has assigned or to point out wherein the error consists, such court is warranted in concluding that he has no confidence in them and has abandoned them, therefore, the court will so treat them. See Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and numerous authorities cited therein; Thomas v. State, 47 Fla. 99, 36 South. Rep. 161; Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392, and authorities there cited; Hoodless v. Jernigan, 51 Fla. 211, 41 South. Rep. 194. The only exceptions to this rule are where the errors are jurisdictional or fundamental apparent on the face of the record itself, when such errors may be considered by the appellate court, even though not assigned, and when the errors assigned are so glaring or patent that no argument is needed to demonstrate such fact. Parker v. Dekle, 46 Fla. 452; 35 South. Rep. 4; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Thomas v. State, 47 Fla. 99, 36 South. Rep. 161.

Before proceeding further it may be advisable to spend

a few moments in considering the construction to be placed upon pleadings at law. Here again we find a division of authorities, one line favoring a liberal construction, and the other a strict construction. This court has from the beginning consistently adhered to the doctrine that a pleading, whether in action at law or a suit in equity, is to be most strictly construed against the pleader thereof. See Cotten v. Williams, 1 Fla. 37; Bennett v. Herring, 1 Fla. 387, text 390; Sealey v. Thomas, 6 Fla. 25; text 36; Hooker v. Johnson, 10 Fla. 198; Richardson v. Gilbert, 21 Fla. 544, text 57; Parker v. City of Jacksonville, 37 Fla. 342, text 350, 20 South. Rep. 538, 539; Herrin v. Brown, 44 Fla. 782, 33 South. Rep. 522, S. C. 103 Am. St. Rep. 182; Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 South. Rep. 897; Pinney v. Pinney, 46 Fla. 559 35 South. Rep. 95; Scott v. Jenkins, 46 Fla. 518, text 530, 35 South. Rep. 101, 105; Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926; Lindsley v. McIver, 51 Fla. 463, 40 South. Rep. 619.

In Bennett v. Herring, 1 Fla. 387, text 390, the following language was quoted and approved: "The declaration must show plainly and certainly all circumstances material to the maintenance of the action, for if there be two intendments, it shall be taken most strongly against the plaintiff." The first headnote in Hooker v. Johnson, 10 Fla. 198, is as follows: "It is a settled rule of practice, that if *uncertainty* occurs in any of the pleadings of a party, they will be most strictly construed against him whose pleadings they are."

Undoubtedly this was the rule of construction at common law. See Andrews' Stephen's Pl. 382, Section 198; 1 Chitty's Pl. (16th Am. Ed.) 261, and authorities cited in

notes; Gould's Pl. 141, Section 169; 1 Saunders' Pl. & Ev. 919 *et seq.;* 1 Tidd's Prac. 451. This rule also seems to obtain in most, if not all, of the States, where the reformed procedure has not been adopted or where no statute has been enacted changing the rule. See collation of authorities in 39 Cent. Dig. 1177 *et seq.* We would also refer to North Birmingham Railway Co. v. Liddicoat, 99 Ala. 545, text 551, 13 South. Rep. 18; Western Assurance Co. of Toronto v. McGlathery, 115 Ala. 213, text 222, 22 South. Rep. 104, 107. Also see 1 Abbott's Trial Brief on Pleadings (2nd ed.) 66 *et seq.,* where many authorities are collected. Even in some of the States following the liberal rule of construction, either under the reformed procedure or otherwise, it has been held that such a construction applies only to matters of form and not to matters of substance. See Clark v. Dillon, 97 N. Y. 370, text 373, where the following language is used: "It was formerly the settled rule to construe doubtful pleadings most strongly against the pleader, but this rule has been so far modified by the Code as now to require them to be liberally construed with a view to substantial justice between the parties. This modification has, however, been held to extend only to matters of form and not to apply to the fundamental requisites of a cause of action. (*Spear* v. *Downing,* 34 Barb. 522; *Cruger* v. *Hudson R. R. R. Co.,* 12 N. Y. 190; *Bunge* v. *Koop,* 48 id. 225.) A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. (*Bates* v. *Rosekrans,* 23 How. Pr. 98.)" Also see Overton v. Overton, 131

Mo. 559, text 566, 33 S. W. Rep. 1; McIntyre v. Houser, 131 Cal. 11, 63 Pac. Rep. 69; Draper v. Cowles, 27 Kans. 484; Beadle v. Kansas City, Ft. S. & M. R. Co., 48 Kans. 379, 29 Pac. Rep. 696. As is said in 1 Tidd's Prac. 451: "The rules of pleading, upon which the statement of the cause of action depends, are founded in good sense; their objects are precision and brevity; nothing is more desirable for the court than precision, nor for the parties than brevity. Precision or *certainty* is of three kinds; first, to a common intent; secondly, to a certain intent in general; thirdly, to a certain intent in every particular : The second, or that which is to a certain intent in general, is all that is required in a declaration; and it ought to be such that the defendant may answer it, a good issue be joined thereon, and the court be entitled to give a judgment. This certainty should pervade the whole declaration; and is particularly required in setting forth the time, place, and other circumstances necessary to maintain the action." Also see Dovaston v. Payne, 2 H. Black. 528, text 530, for an interesting discussion by Buller, J. In Gould's Pl. 141 Section 169. it is said that "The rule is founded, not only upon the presumption that each party's statement is the most favorable to himself, of which his case will admit; but also upon the obviously reasonable principle, that it is incumbent on each pleader in stating the ground of his action or defense, to *explain himself fully and clearly.* Any ambiguity, uncertainty, or omission in the pleadings, must therefore be at the peril of that party, in *whose* allegations it occurs." As was said by Brewer, J. in Draper v. Cowles, 27 Kans. 484, text 487, "Where the language is of doubtful import, and the pleading is challenged before trial, then the rule is to construe the pleading against the pleader, and this upon the ground that as he himself

selects the language he should make his meaning clear."

A few words now as to demurrers and I shall proceed to a discussion of the first two assignments in the instant case. "At the common law, special demurrer was necessary only in the instance of duplicity, but by statutory enactment it was afterwards provided that no formal defect in pleading could be reached unless specifically pointed out." 6 Ency. of Pl. & Pr., 309, and authorities cited in note 1; Gould's Pl. 430, section 8; 1 Saunders' Pl. & Ev. 951; Powdick v. Lyon, 11 East 565; Anonymous, 3 Salk. 122; Sasscer v. Walker, 5 Gill and J. (Md.) 102, text 108. The statutory enactments referred to are 27 Eliz., C. 5, and 4 & 5 Anne, C. 16, for a full discussion of which and their effect see 1 Saunders' Pl. & Ev. 950 *et seq.* Since those statutes, no defects in form could be taken advantage of on general demurrer, but a special demurrer was required. See Gould's Pl. 430 *et seq.* So the law remained in England until the adoption of the Common Law Procedure Act of 1852, by which special demurrers were abolished. It should be further observed that at the common law no particular cause had to be alleged in a general demurrer, but since the enactment of 27 Eliz., C. 5, and especially since the enactment of 4 & 5 Anne, C. 16, the party demurring was required to "specially and particularly set down and express" the points or grounds upon which he relied. I Chitty's Pl. 695. So in this State both general and special demurrers were recognized until the enactment of Chapter 1096 of 1861, sections 14 and 15 of which, based upon sections 50 and 51 of the Common Law Procedure Act, had the effect of abolishing special demurrers. These sections were brought forward into the Revised Statutes of 1892 as sections 1050 and 1040. See

12—S. C.

Wade v. Doyle, 17. Fla. 522, text 532; Camp & Bros. v. Hall, 39 Fla 535, text 568, 22 South. Rep. 792, 796; Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272, text 278 *et seq*, 32 South. Rep. 832, 834; Little v. Bradley, 43 Fla. 402, text 410, 31 South. Rep. 342, 344; State *ex rel.* Kittel v. Jennings, 47. Fla. 307, 35 South. Rep. 986; Peacock v. Feaster, 51 Fla. 269, 40 South. Rep. 74. However, since the establishment of this court the party demurring has been required to state some matter of law intended to be argued. The practice was first regulated by a rule, found on pages XI. and XII. Circuit Court Rules prefixed to 1 Fla., which was as follows:

"1. In any demurrer, before it is signed by counsel, some matter of law intended to be argued, shall be stated, and if any demurrer shall be filed without such statement, or with a frivolous statement, it may be set aside as irregular, by the court: Provided, that the party demurring may, at the time of the argument, insist upon any further matter of law, of which notice shall have been given to the court in the usual way.

2. The form of the demurrer shall be as follows:—'The said defendant, by . . . . . . . . . . . . . his attorney, or in person, &c. (or plaintiff), says that the declaration (or plea) is not sufficient in law,'—showing the special cause of demurrer, if any." This rule seems to have remained in force until the enactment of Chapter 1096 of 1861, section 36 of which was as follows: *"Be it further enacted,"* That the form of a demurrer shall be as follows or to the like effect: 'The defendant, by his attorney (or in person, &c., or plaintiff) says that the declaration (or plea) is bad in substance,' and in the margin thereof some substantial matter of law intended to be argued shall be stated; and if any demurrer shall be delivered without

such statement, or with a frivolous statement, it may be set aside by the court, and leave may be given to sign judgment as for want of a plea, and the form of a joinder in demurrer shall be as follows or to the like effect: 'The plaintiff (or defendant) says that the declaration (or plea) is good in substance.' " This section, with some modifications, was brought forward as section 1053 of the Revised Statutes of 1892, which reads as follows: "The form of a demurrer shall be as follows, or to the like effect: 'The defendant (or plaintiff) says that the declaration (or plea) is bad in substance'. And the substantial matters of law intended to be argued shall be stated; and if any demurrer shall be delivered without such statement, or with a frivolous statement, it may be set aside by the court. The form of a joinder in demurrer shall be as follows, or to the like effect: 'The plaintiff (or defendant) says that the declaration (or plea) is good in substance.' "

This court, in construing section 36 of Chapter 1096 of 1861, in Stephens v. Bradley, 24 Fla. 201, 3 South. Rep. 415, held that "Causes of demurrer should be indicated in its margin, and when not so indicated, the practice of presenting them in argument should be discouraged," and strongly intimated that causes not so specified could not be presented and argued for the first time in this court.

In construing section 1053 of the Revised Statutes of 1892 this court, in Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272, text 281, 32 South. Rep. 832, 835, used the following language: "The change made in section 1053 Revised Statutes requires the substantial matters of law intended to be argued to be stated, and under this section it is the opinion of the court that the demurrer should be held to waive or abandon all objections not stated except

those extending to such essential and vital defects in pleadings as to show no cause of action or matter of defence and such as are incapable of being cured by the statute of jeofails. Such defects can not, of course, embrace defective statements of formal matters, but must be such as to exhibit a total absence of allegation of facts without which there can be no liability inferred. In determining the sufficiency of a demurrer the court will be confined to the grounds stated and will examine no others unless they extend to an omission to allege substantive facts which are essential to a right of action or matter of defence and which are not implied in or inferable from those that are alleged." Also see Little v. Bradley, 43 Fla. 402, text 407, 31 South, Rep. 342, 343; State ex rel. Kittel v. Jennings, 47 Fla. 302, text 306, 35 South. Rep. 986, 988; Jordan v. Sayre, 24 Fla. 1, 3 South. Rep. 329. As was well said in Cowan v. Motley, 125 Ala. 369, 28 South. Rep. 70, 71, "The reason for requiring by statute the causes of demurrer to be distinctly shown is, that defects in pleading may be so distinctly pointed out as that the party pleading may be apprised of their existence, and have opportunity to cure them by amendment if he can." In State ex rel. Kittel v. Jennings, 47 Fla. 307, 35 South. Rep. 986, we held that "ambiguity and argumentativeness are defects in a pleading, which at common law were treated as formal defects which made the pleading subject to special demurrer, but special demurrers are abolished in this State." Perhaps this expression is not as clear as it might be. As we have already seen, at the common law, a special demurrer was necessary only in the instance of duplicity, but after the enactments of 27 Eliz., C. 5, and 4 & 5 Anne, C. 16, a special demurrer was necessary to reach any defects or faults in form. Argumenta-

VOL. 52, JUNE TERM, 1906. 181

A. C. L. R. R. Co. v. Benedict Pineapple Co.—Concurring Opinion.

tiveness in a pleading is a matter of form. Salt Lake City National Bank v. Hendrickson, 40 N. J. L. 52, text 56, and authorities there cited. Whenever the ambiguity which is sought to be reached by demurrer amounts simply to duplicity a general demurrer will not lie. "Where the pleading in its statement of *facts* is ambiguous or defective, it will be construed most strongly against the pleader." State *ex rel.* MacKenzie v. Casteel, Auditor, 110 Ind. 174, text 187, 11 N. E. Rep. 219, 226, and authorities there cited. In addition to the authorities previously cited in this opinion, the following may prove instructive upon this point: Onion v. Clark, 18 Vt. 363; Houston v. Hilton, 67 Ala. 374; Bolling & Son v. McKenzie, 89 Ala. 470, 7 South. Rep. 658; Corpening & Co. v. Worthington & Co., 99 Ala. 541, 12 South. Rep. 426; Moore v. Heineke, 119 Ala. 627, text 634, 24 South. Rep. 324.

I turn now to a consideration of the first two assignments. The first demurrer was to the original declaration, which contained three counts. It is settled law in this court that where the demurrer is to the whole declaration, and it is found to contain one good count, the judgment on the demurrer must be for the plaintiff. McKay v. Friebele, 8 Fla. 21; Barbee v. Jacksonville and Alligator Plank Road Co., 6 Fla. 262; Gulf Lumber Co. v. Walsh, 49 Fla. 175, 40 South. Rep. 831. It is further settled law in this court that in actions where negligence is the basis of recovery it is not necessary for the declaration to set out the facts constituting the negligence, but an allegation of sufficient acts causing injury, coupled with an averment that they were negligently done, will be sufficient. The Consumers Electric Light & St. R. R. Co. v. Pryor, 44 Fla. 354, 32 South. Rep. 797, and authorities therein cited; Louisville & N. R. Co. v. Jones, 45 Fla.

407, 34 South. Rep. 246. Tested by this rule, the first count in the declaration must be held sufficient to withstand the attack made upon it by the demurrer, therefore, the first assignment must fail. However, as the demurrer was to each count of the declaration as well as to the declaration as a whole, it may be advisable for me to say that the grounds of the demurrer are so general in their nature that we cannot be required to do more than to sufficiently examine each count to determine whether or not such essential and vital defects exist therein as to show no cause of action. State ev rel. Kittel v. Jennings, 47 Fla. 302 South. Rep. 986. In view of the fact that the principal recovery was had under the fourth count and I shall have to discuss the matter fully in disposing of the second assignment, I content myself with calling attention to the fact that the third count may be well open to criticism in that discussion.

Taking up now the second assignment for consideration, which is based upon the overruling of the demurrer to the fourth count in the declaration, added after the trial had begun, a greater difficulty confronts us. With what does it really charge the defendant? It alleges that the defendant "carelessly and negligently allowed a pinery of the plaintiff situated near the track of the defendant to have its canvas covering thereon placed to protect the pineapple plants and their fruit from cold, to be burned by means of fire communicated from or by means of its locomotive, and the said plants and their fruit were damaged by cold and frost soon thereafter for want of the canvas covering so negligently and carelessly burned by the defendant." Bearing in mind, under the authorities previously cited, that the plaintiff, being familiar with the facts constituting the alleged negli-

gence, had its choice of words in which to allege and charge such negligence, we must presume that it has stated its case against the defendant as strongly as the facts would warrant. This count must also be construed most strongly against the plaintiff. It will be observed that it first charges the defendant with carelessly and negligently allowing the canvas covering to be burned by means of fire communicated from or by means of its locomotive and then concludes with the statement that the damage was occasioned "by cold and frost soon thereafter for want of the canvas covering so negligently and carelessly burned by the defendant." Are we to understand that the plaintiff seeks to charge the defendant with "carelessness and negligently *allowing*" the pinery to have its covering burned, or with the actual negligent and careless burning thereof? Since the declaration has both expressions in it and either construction might be placed upon it without doing any violence to the language used, we must test it by the weaker allegation, as the "case is not stronger than its weakest aspect." 1. Abbott's Trial Brief on Pleadings (2nd ed.) 85, and authorities cited in note 2. This is the rule we have applied in construing a bill in equity, and we know of no reason why it should not be applied to a declaration. See Barco v. Doyle, 50 Fla. 488, 39 South. Rep. 103; Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597, 601. There is no allegation that the defendant carelessly and negligently allowed the fire to escape from its locomotive, by means of which the burning was done. For aught that is alleged in the declaration, the defendant was entirely blameless as to any fire "communicated from or by means of its locomotive," and if fire was so communicated it was innocently done so far as this count charges the defendant. Again,

it can hardly be claimed that the defendant was an in-
surer of plaintiff's pinery from loss either by fire or cold,
or that the law, under the issuable allegations of the dec-
laration, cast upon defendant the duty of putting out a
fire in plaintiff's pinery, regardless of how it originated.
Again, not having sufficiently connected the defendant
with the negligent burning of the canvas covering, the
defendant could not be held liable for any damage occa-
sioned by "cold and frost soon thereafter." The *termimus
a quo* and *termimus ad quem* are not sufficiently stated
and connected to charge the defendant. As was said in
Kansas City, M. & B. R. Co. v. Lilly, Miss. 8 South. Rep.
644, which is cited to us by the plaintiff in error, so far as
is alleged in this count, "one event was prior to the other,
and that is all there was to it. In contemplation of law,
a disconnected, independent, distinct and unexpected
injury, though subject in time to the breach of a contract,
can no more be said to be the result of the breach of the
contract than the subsequent injury can be said to have
caused the breach of the contract. *Post hoc propter hoc*
is not a safe process of reasoning." Also see the 27th
headnote in Jacksonville, T. & K. W. Ry. Co. v. Peninsular
Land, Transp. & Manuf'g. Co., 27 Fla. 1, 9 South. Rep.
661, 17 L. R. A. 33, which is relied upon by both parties,
for a definition of proximate cause. Looked at from every
viewpoint, this count is obnoxious to the rules of good
pleading. In addition to the authorities already cited,
see Duval, Receiver, v. Hunt, 34 Fla. 85, 15 South. Rep.
876; Jacksonville, T. & K. W. Ry. Co. v. Thompson, 34
Fla. 346, 16 South Rep. 282, S. C. 26 L. R. A. 410; Friend
v. Allen, Ky. 56 S. W. Rep. 418.

I have carefully examined Alabama G. S. R. Co. v. Tay-
lor, 129 Ala. 238, 29 South. Rep. 673, and Alabama G. S.

R. Co. v. Johnson, 128 Ala. 283, 29 South. Rep. 771, cited to us by the defendant in error, and am. of the opinion that they do not support its contention. In each of the two cited cases the declaration differs materially from the one in the instant case, as a comparison thereof will readily show. To say the least of it, the count in question is not well or skilfully drafted. However, when I turn to the demurrer interposed to this count and examine the three grounds of which it consists, I find that it, too, is lame in pointing out the specific defects in the declaration. The first ground, that "the added count does not state a cause of action," is too general, amounting simply to a repetition of the demurrer that the count is bad, and is not a sufficient compliance with the requirements of section 1053 of the Revised Statutes of 1892. I find that Alabama has a statute which is quite similar and which has been in force since 1852, forming section 2253 of the Code of that year, and section 3303 of the Civil Code of 1896, which is as follows: "No demurrer in pleading can be allowed but to matters of substance, which the party specifies; and no objection can be taken or allowed which is not distinctly stated in the demurrer."

In a long line of decisions construing this statute the Supreme Court of that State has held that a mere general specification, such as "A demurrer to a complaint, 'for the reason that the same does not, on its face, show any sufficient cause of action against the defendants,' is not a compliance with the requisition of the statute, (Code. Sec. 2253), which requires a distinct specification of the causes of demurrer." Robbins v. Mendenhall, 35 Ala. 722; Helvenstein v. Higgason, 35 Ala. 259; Cotten v. Rutledge, 33 Ala. 110; Brewer v. Watson, 65 Ala. 88 Mobile & Montgomery Ry. Co. v. Crenshaw, 65 Ala. 566; Daniels v. Ham-

ilton, 52 Ala. 105; Eads v. Murphy, 52 Ala. 520; Sledge v. Swift, 53 Ala. 110; Moore v. Heineke, 119 Ala. 627, 24 South. Rep. 374. An examination of these, as well as of a number of other Alabama decisions, discloses that such court has also uniformly held that "the court cannot consider any other objection than that specifically stated in the demurrer." (Cotten v. Rutledge, *supra*), that however insufficient pleadings may be in other respects, yet if not obnoxious to the particular grounds of demurrer assigned, the demurrer should be overruled," (Eads v. Murphy, *supra*). These decisions are in line with our own decisions in Florida Cent. & P. R. Co. v. Ashmore, *supra*, Little v. Bradley, *supra*, and State *ex rel.* Kittel v. Jennings, *supra*.

The second ground of the demurrer, that "said added count is too vague and uncertain to join issue on," is open to practically the same objections as the first ground which we have just considered. It is too general and not sufficiently specific. Sledge v. Swift, *supra*, is in point, holding that a demurrer to a pleading on the ground that "it is uncertain," cannot be considered, as "such objection does not specifically point out the defect, or give opportunity to avoid it by amendment." Such a ground would be more available as a basis for a motion for compulsory amendment of the declaration, under section 1043 of the Revised Statutes of 1892. See Camp Bros. v. Hall, 39 Fla. 535, text 569, 22 South. Rep. 792, 796, and authorities there cited; Florida Cent. & P. R. Co. v. Ashmore, *supra*.

The third and last ground of the demurrer, that "the allegations in said count show on their face that the negligence of the defendant was not the proximate cause of the

plaintiff's damage," is a little better than the first two, though it is open to criticism along the same lines.

I must admit that, owing to the confused state of the pleadings, I am by no means free from perplexity and doubt. The count in question is undoubtedly faulty, but the demurrer has failed to specifically point out the vices with which it is infected. Either this should have been done or else a motion for compulsory amendment should have been filed. Neither of these courses was pursued. I am, then, confronted with the question as to whether or not this count is so fatally defective as to show no cause of action against or liability upon the part of the defendant to the plaintiff. After some hesitation, I feel that I must answer this question in the affirmative. It follows, then, that the trial court erred in overruling the demurrer to this count. See Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272, text 280, 32 South. Rep. 832, 835, and authorities there cited.

As the plaintiff recovered under this count, it becomes unnecessary for me to examine the other assignments. See Florida Cent. & P. R. Co. v. Ashmore, *supra;* South Florida Tel. Co. v. Maloney, 34 Fla. 338, 16 South. Rep. 280.

For these reasons I concur in the conclusion reached in the majority opinion.